I need to make a motion this morning, so I will cede the presiding authority to Judge Prost. Would you rise, Ms. Pogrowski? I'd like to move the admission to our bar, Corianne Pogrowski, who you both know has been one of the finest clerks I've had and a real contributor to the court here. She's a member in good standing of the bars of the District of Columbia and Virginia, and I'll vouch for her. Will that be to her advantage or disadvantage? Well, to her advantage, but I must say we're fortunate enough to have a special relationship with Corianne. So I would move her admission, and I'll tremble to see the result here. I agree. Well, she's granted the pleasure. Please raise your right hand if you swear or affirm that you will report yourself as an attorney at this court, uprightly and according to the law, and will support the Constitution of the United States of America. I do. I look forward to having you contribute for years to come, Corianne. We'll now move to our first case this morning, which is Arlington Industries v. Bridgeport. Mr. Anderson. Thank you, Your Honor. May it please the Court, the judgment of the District Court must be reversed. I'd like to focus my argument on three points this morning. First, that the District Court wrongly construed the near-said trailing end limitation of Claim 8 of the 050 patent. Second, that the District Court erred in not granting summary judgment and allowing Arlington's unduly prejudicial, willful infringement evidence to infect the entire trial, while at the same time not allowing Bridgeport to present its defense to that charge. And finally, that Arlington failed to present sound economic proof to support its lost profits and damages award, such that no reasonable jury could award Arlington lost profits. Turning to the first issue, if Your Honors would look at the second or last page of the addendum, page A301, it's column 10 of the 050 patent. The limitation in issue is at approximate lines 39 to 43, and it says, carried by said metal adapter near said trailing end of said adapter. The language of that claim is clear and unambiguous on its face. Near said trailing end of said adapter clearly modifies the preceding clause and describes where the tensioning tangs are attached to the adapter. They are near the trailing end. This is the plain, ordinary, and English grammatical reading of the limitation. Carried by refers to where the tensioning tangs are born or attached to the adapter. This is the appropriate definition, and it is clear when you look at it that it's unambiguous that the near said trailing end of said adapter modifies the preceding clause. The district court and Arlington argue that the near said trailing end clause modifies the phrase that follows, which engage the sidewalls of the hole in the junction box. But there is nothing in the plain and ordinary and unambiguous phraseology in that limitation that suggests that it should be read contrary to ordinary English usage. The court in Arlington reached this erroneous construction only by focusing on the function of the tensioning tangs as described in the specification. But this is a structural limitation. This is not a limitation that is describing how the thing works. It is describing what it is. I find this whole discussion of this particular claim limitation very confusing. But let me focus you on one part, at least, of the spec, which is an argument that Arlington makes. When you're looking at figure 11, I guess, of the patent, and you look at 46 and 48, which are tensioner tangs, right? Correct. As I look at it, if I'm understanding this figure correctly, it seems to me that 46 and 48 are located closer to the leading end of the adapter than to the midpoint or the trailing end. Isn't that intention or, well, isn't that, you know, sort of dispel your arguments with respect to how the claim ought to be construed? Or is there something I'm missing? Well, I would respectfully disagree, Your Honor, and I believe it's figure 8 that you're referring to. 46 and 48 and 42 are described in the specification as locking tangs. The parties agreed that the members being referred to in the limitation in issue is item 23, tensioning tangs. Now, the specification says that depending upon the width or thickness of the wall and the hole in the junction box, 46 and 48 or 44 might become tensioning tangs. But it refers to them in the first instance as locking tangs. And indeed, throughout the patent claims, wherever carried by is used in reference to the locking tangs, it does not have the phrase, you know, near said trailing end of said adapter. It talks about the locking members just simply carried by the metal adapter. And it does not impose any, if you will, restriction or limitation on where the locking tangs are located. If you were to say that, well, 46 and 48, you know, because they might become tensioning tangs, therefore they can be in different locations, you would end up with a claim that could only be infringed depending upon how thick the junction box might be. You wouldn't know whether there is infringement unless you knew how thick the junction box happened to be. I think that when you read the specification, the inventors never clearly or acted as their own lexicographer or imposed any limitation with regard to, as the district court said, that the tensioning tangs have to be located near the trailing end of the, excuse me, that the tensioning tangs have to extend to the trailing end of the adapter ring, or that they have to engage the sidewalls of the hole in the junction box near the end of the tensioning tangs. There's no limitation in the specification with regard to the length. But there's nothing in the claim that supports your idea that it has to be somewhere between the midpoint and the trailing end, right? I think that it is. When it says near said trailing end of said adapter, we're giving the inventors the broadest… The boundary could be on the farthest point away from it and still be near, couldn't it? No. That's a pretty ambiguous term. I don't think it is ambiguous, your honor. I think when it says near said trailing end, it means exactly what it says. And if you were to, and I think that our proposed construction gives the inventors the maximum scope of what they claimed in the patent. The tensioning tangs can be from the midpoint and anywhere toward the trailing end. That's near said trailing end. That's consistent with exactly what the claim says. But there's no reference to a midpoint limitation in the claim or in the specification. And what we have is a figure which shows it somewhat differently, right? Well, first off, with regard to your first point, there's nothing in the claim that says, or excuse me, in the specification that says midpoint. We're looking at the claim language and what the claim language clearly and unambiguously says. I don't believe that figure 8 contradicts or suggests otherwise to this limitation or to our interpretation because figure 8 is referring to locking tangs. And the description in the patent specification is with regard to locking tangs that may become tensioning tangs. But that doesn't mean that they are tensioning tangs. You focus on the word near, but that word is precisely in the court's claim construction as given to the jury, right? So they had every chance to apply the near limitation that appears in the claim when they reached their verdict, right? No, I disagree. Is the word near in the court's claim construction? The word near is in the court's claim construction, but it is used to modify the which engage the sidewalls of the hole in the junction box. The court's claim construction says with a portion of each member located near said trailing end of said adapter. It simply says that a portion is located near the trailing end, which would be particularly when you look at the way that Arlington argued it and what the court said in its claim construction order, it's basically the very tail end of the tensioning tang, that it has to be long enough to get to the trailing end or that it has to engage the hole in the junction box near the trailing end of the tensioning tang. That is not a proper reading of the claim limitation. You do not read the claim, the near said trailing end of said adapter, as modifying what follows in the ordinary language and in its plain and unambiguous reading here, near said trailing end of said adapter modifies where the tensioning tang… A portion of it is near. Why isn't it near? Pardon? A portion of the tang is near. Why isn't the tang near? Well, because that could be the very tail end of the tang. It sure can be. That's the point. It's part of the tang and it's near. Why isn't the tang then properly near? Because it's not carried by said metal adapter near said trailing end. You then could have, in accordance with the district court's construction, simply the very tail end of the tang having to extend to the trailing end of the adapter or having to engage the hole in the junction box near the trailing end. And there is nothing in the specification that provides for that sort of a limitation. I mean, for example, under the construction here, Judge Prost's question with regard to figure 8, none of those locking tangs that may or may not ever become tensioning tangs would be located near said trailing end of said adapter. I think we have this argument. Do you want to move to any other? Yes, sir. Can I ask you about circular just briefly, because that's one of your claim construction arguments, and just sort of piggybacking on the Chief's comments with respect to what the claim says on the other limitation. The claim term is circular. Is there anything in that language that we could use to construe this as a perfect cylinder shape, which is what your dispute is here, right? Well, our view is that you have to use the definition of circular for a three-dimensional figure as opposed to a two-dimensional figure, because the claim is directed toward a three-dimensional object, not a two-dimensional object. And so in our view, when it says circular, it has to have substantially the same diameter throughout. And wouldn't one of skill in the art understand that circular has the meaning that was given by the court? I think that a person of ordinary skill in the art in this area would understand that circular has to refer to a three-dimensional object and that it would have to have a substantially similar diameter throughout its axial length. But for it to fit into the junction box, I mean, at that point where the connector fits into the junction box, you do have a circular cross-section, regardless of the shape of the connector. Well, you would where at that very point, if you take a slice, if you take a thin slice, which is the position that Arlington and the district court took, if you take a thin slice, it would be circular. But isn't that the point of the limitation, where it enters the circular hole in the electrical junction box? I think the purpose of the limitation is to describe the fact that this is a three-dimensional object that has substantially similar diameter throughout its axial length. If I could just briefly say with regard to willfulness, I think that a new trial is required here because the district court wrongly allowed all of this evidence, all of this highly prejudicial evidence, on willful infringements to be presented to the jury at the same time. Wait, you're not, the willfulness is the cross-appeal, right? The district court granted you J-mall on the willfulness issue, right? So you don't want a new trial on willfulness, do you? If the, we believe that we're entitled to, if the court does not reverse the district court's claim construction, we believe we're entitled to a new trial overall because the evidence that was allowed in on willfulness, which only was relevant to the subjective wrong of In re Seagate, so permeated the trial, so prejudiced it that it made the trial unfair. So wait, what's the nature of your new trial? You don't want a new trial on willfulness, do you? We want a new trial. You want a new trial that doesn't include willfulness. We want a new trial that doesn't include any of the willfulness evidence because we weren't allowed to present our defense. Our defense was the objective evidence of Judge Caputo's decision and judgment of no infringement in his claim construction. The court didn't allow that. The court didn't allow the limiting instruction that we asked for. The trial from start to finish was all about willfulness and trying to, and portraying Bridgeport as a serial copyist, a recidivist, a bad actor that needed to be punished. And, you know, as the court found... But is it correct, is it not, that the opposing counsel was clear to indicate that all of those issues went to willfulness? I don't think that the opposing counsel was clear throughout the trial that those issues were related solely to willfulness. That evidence was, from the beginning of the opening statement to the close, it was 75% of the trial was evidence relating to alleged willful infringement that was allowed to be put in going back even before the existence of the 050 patent relating to a product... How do you calibrate 75%? I was at there and clocked the minutes. Be careful when you make allegations. I'm sorry. You could say that it had a lot to do with it, but don't give me a number. Okay, I apologize, Your Honor. I can tell you as the trial lawyer who was there, it was a lot. Okay, thank you. But they were allowed to put on that evidence. You're just suggesting that it infected the consideration of the infringement question? I think it infected the consideration of all of the questions. I think that it infected all of the questions, damages, liability, breach of patent liability. But that happens all the time in trials. If you're going to trial the willfulness issue, you're going to put in that evidence, and you're going to make it clear, as clear as humanly possible, to suggest this evidence goes to the willfulness allegations. But beyond that, that's going to happen in quite a number of trials, right? What are you suggesting, that you have to try it separately? Because if not, someone like yourself can come in and say it infected the proceedings? I think that where the defense is purely objective, as here, the prior finding by Judge Caputo in our favor, it should have been dismissed before the trial started, and it shouldn't have been part of the trial. And I'd like to reserve my last few seconds. I guess I don't have any. Well, accurately, it expired. But why don't we give you two minutes of rebuttal time back, Mr. Anderson, if you'd give Ms. Kloon an extra two, if she needs to use it. Thank you, Your Honor. Good morning, Chief Judge, and may it please the Court. I want to start first with Judge Prost's questions, with respect to the carried-by limitation, and see if I can clear up any kind of confusion with respect to that claim. The Court correctly noted that the judge, and I want to make sure that the Court recognizes it's not just the judge in this case, but there was actually another judge, Arlington Two Court, that this Court is familiar with, that actually both of which construed this construction in connection with Arlington's claim construction and rejected Bridgeport's construction. And the reason why I think there's confusion is because Bridgeport ignored the most important aspect about what carried-by was construed to mean. And carried-by was construed to mean simply a part of the adapter, which is why then the near said trailing end of the adapter still does modify the part of, because the outwardly sprung members are actually carried by the metal adapter near the trailing end of the adapter and still engage the sidewalls of the junction box. That is clearly supported by the claim, and it's supported by the specification, as Judge Prost, as you mentioned, and what my opposing counsel seemed to ignore is the fact that at Columns 7, 4 through 9, the disclosure specifically states that the locking tangs of 40, 42, 44, 46, and 48 convert to tensioning tangs depending on the thickness of the wall. Now, contrary to my opposing counsel's argument, there isn't an issue about notice of infringement because there still would be a requirement to meet Claim 8 that there have to be a portion of the tensioning tang near the trailing end of the adapter. And so Bridgeport's entire argument about where the attachment happens was not supported by the claim or the specification because there is no point of attachment in these outwardly sprung members. They're simply part of the adapter. Now, moving to your circular question, similarly, Judge Prost, the judge correctly construed the two-dimensional term circular to have circular cross-sections because of the fact that it's very easy to apply a two-dimensional term of circular to the adapter. And as both Judge Chief Rader and Judge Rayner, as you asked my opposing counsel, circular was construed to the adapter as meaning circular cross-sections, and that was clear from the specific of the claim language as well as how it's used in the specification. And specifically, Bridgeport's claim construction with respect to a perfect cylinder... Since you're going through a round hole, it's pretty clear what you're talking about, isn't it, right? Exactly, Your Honor. And in fact, their construction for a perfect cylinder was contradicted by the specification because, in fact, there is numerous disclosures in the specification showing varying diameters along the axial length. In particular, the preferred embodiment, which shows that there was a ridge that was specifically called out by the patentees to have a greater diameter, and it's shown in figures 14, 15, and 16. Now, why do we not give weight, if that's your view, to the fact that Bridgeport went out and got its own patent on the limitations we're talking about? Shouldn't we give that some weight? Patent office had this as prior art, didn't find it was anticipatory. Why should that not be given weight in our consideration? With respect to the claim construction and with respect to the infringement and willfulness, Your Honor, there's two reasons. Number one, Bridgeport absolutely failed to ever present any evidence on the record that they even practiced the majority of the patents that they have been relying upon. And if you give me one second, I will tell you where the judge specifically noted that... Let's see. Well, let me ask you then hypothetically. Sure. Let's assume Bridgeport went out and hypothetically got a patent that explicitly covers these limitations, the ones they're actually practicing. Would that be an adequate defense to a charge of infringement? No. If they were able to get the patent, as a matter of law, would that be an adequate defense? And if not, why not? Absolutely not. There always can be the dominant patent of Arlington that was much broader than Bridgeport's very, very narrow patents. So first of all, that wouldn't be a defense. That's why the statute says improvements, right? Exactly. They would have to have proven that they patented the difference under this Port's long-ago case, the Zygo versus Wygo case, and that would only be relevant to a doctrine of equivalence analysis if they could establish that they functioned in a different way if they actually patented the one and only difference, which they did not. But more importantly, we asked them throughout all of discovery, over and over again, to establish and to set forth for us some evidence that they practiced this patent, and they failed to do so. So when they showed up at trial with an expert that had never presented an expert report establishing that they practiced the patent, Judge Conner specifically excluded the rest of the patents, and the only patent he did allow them to present, which was the 988 patent, he even stated on the record at A81 as well as at A96 that Bridgeport really failed to present any evidence that it even practiced these patents. So we would suggest that not only is it not relevant as a matter of law, but factually it's not relevant to this case at all. Ms. Kloon, when you're dealing with a jury, you have to be extremely aware of the potential of prejudicial evidence. For that reason, this court has rather consistently counseled that evidence of willfulness should be kept as a matter for the trial judge alone so that there isn't prejudice to the jury. Did that happen here? Do we need a new trial? Absolutely not, for two reasons, Your Honor. First of all, as you properly commented before, the willfulness case was very much segregated between infringement versus willfulness. In fact, we specifically noted in our brief that every single time, and I actually gave the closing statement, that every time I discussed the copying evidence of the subjective... The legal types understand how to compartmentalize. But when you've got a jury, you're very careful to recognize they're not trained legal scholars. They don't separate things like we do. However, if you look at the fact, Your Honor, all of the arguments, in particular in the closing statement, all of the arguments with respect to infringement were specifically referring only to Dr. Ron's testimony and Mr. O'Neill's evidence about measurements, the measurements of the product, the photos of the product. We never discussed even remotely the arguments with respect to the copying evidence, the objectiveness, the lack of due diligence on behalf of Bridgeport. And then there was an instruction that was properly given, and there's no indication by Bridgeport that the instruction was not... And so you're saying to them, as a matter of infringement, keep things separate. There's also a contract breach claim here. Exactly, Your Honor. Is there something that says, don't consider any of that evidence for the contract breach? No, and, in fact, it was actually relevant to the... A lot of the evidence was relevant to the contract breach because we were trying to establish the fact that these products were colorable imitations thereof. And that's why the evidence came into the trial, for example, the evidence of the confession of judgment and injunction, the evidence of the similarities of the old product to the new product and their failure to make any significant modifications, all of which were relevant both to willfulness and to the colorable imitation analysis. And so, therefore, the jury was properly allowed to consider the evidence of that to the breach of contract as well. So, and if I may, Bridgeport does not actually remotely establish or argue that there was actually an error in the instruction. And, of course, the Supreme Court, as everybody's noted, we are to presume that juries follow instructions, particularly in this case when there was no argument like, for example, that Bridgeport tried to claim that there was an argument that they were portrayed as a copier in the midst of when we were talking about infringement. And that's not the case. If you look at the closing statement in particular, all of that evidence was related to the willfulness. Now, that actually supports our cross-appeal in this case and the fact that actually Bridgeport should talk about the fact that it was 75% of the trial or whatever it is, as Chief Judge, you just asked them. The reality is that it was overwhelming evidence of objective recklessness in this case. Well, you're asking us, right, if my count is right, before your appeal got here, five different judges at the district court level and at the appellate level had looked at this case. And two of those fives had reached a claim construction that would have resulted in a finding of non-infringement. If I'm right about that, on this record, are you really expecting or suggesting that we would then overturn the JMO willfulness? Absolutely, Your Honor, because where the error is and where the judge made an error in the JMO is that he negated all of the actual facts and circumstances that were informing the defendant's position with a simple trial lawyer's post hoc defense of claim construction. And, Your Honor, as noted in I4I and in Cohesive Technology, this court has only set aside, for example, in Cohesive, when they said that a reasonable claim construction could be a defense, there was evidence on the record in that case that the defendants themselves had actually been the ones considering the claim construction and actually testified in the bench trial in Cohesive that the reason that they proceeded... Isn't that moving the objective prong into the subjective prong? No, because when this court in Seagate was aligning itself with the civil context of willfulness of the Supreme Court, all it took out of the subjective prong is the state of mind. It was still the facts and circumstances known to the defendant at the time of their conduct, of the challenged conduct. And if you look at the language of the first prong of Seagate, it specifically says what were their actions and did they act despite a high likelihood that their actions constituted a high likelihood of infringing a valid patent. And this is a company that isn't its first time at the rodeo here. They were actually subject to an injunction on this case and in depositions, questions were specifically asked, what actions did you take to avoid infringing this product? The answers were they took none. Mr. Arey actually assigned the responsibility to Mr. Kiley. Mr. Kiley, upon deposition, said that he never read the patent, didn't know how to read the patent, and was not legally qualified to read a patent. They failed to obtain advice of counsel. And so the fact is where the judge erred, and you're absolutely correct that if there is a reasonable defense that the defendant themselves has, then it's relevant to whether or not objective prong is met. But here the defendant did not have the defense. The trial lawyer came up with a claim construction, and of course in every case... You're asking us to question whether this trial judge properly re-weighed all the evidence which he heard and we haven't? We know actually that Judge Conner actually didn't weigh the evidence. If you look at what Judge Conner... The only time Judge Conner actually weighed the evidence with respect to willfulness was in his denial of the summary judgment. And if you look at that document, you can see that Judge Conner, he was actually correct there. He specifically stated that he was not going to... He thought a jury could find willfulness because of the fact that there was a question as to whether or not there was fair standards of commerce and whether or not the fact that they actually had considered the defense. They said that the defense of claim construction did not exist at the time of the infringing conduct. When you look at his JMAL ruling, you'll see that he specifically didn't weigh any evidence. He just used a per se rule. A per se rule that this claim construction of Judge Caputo, which was then in the dissenting opinion here, that that just negated all of the actual facts and circumstances. And that's what we would argue was an error. So you're saying under Seagate, okay, I'm an alleged infringer. And at the time, I don't think about validity arguments. I don't know what validity is. But as the trial... After I'm sued, as the trial progresses, my lawyer comes up with the best validity defense you could come up with. At the end of the day, he may lose. Let's assume he loses. But it's a really strong validity defense. It's a validity defense that creates a strong dissent by the chief when we review it. On that record, you're saying they still are guilty of willful misconduct because at the actual time of infringement, they hadn't really formulated or come up with this validity defense. Yeah, we would say that in every case, under Seagate says that it has to be the facts and circumstances at the time of the infringement. And whether you determine that the time of infringement is prior to the infringing activities... Well, the facts and circumstances are the same. What's changed is whether or not the alleged infringer actually understands and appreciates all those facts. But the facts and the circumstances with regard to the validity defense exist at all times. That didn't just come up at the end of the day, right? Right. The fact that they didn't come up with a validity argument... And, of course, if we're at willfulness, we know that the validity argument actually failed. And then, for example, in the I4I case, Your Honor, that you actually... Yeah, but that's all Seagate. I mean, objectively reasonable assumes that we failed. Any case in which you're evaluating willfulness assumes that you've already failed. So we're there in every case, right? That's absolutely correct. And in this court held in I4I, you specifically looked at all the facts and circumstances. Now, in that case, Microsoft had all kinds of reasonable defenses, just like in the recent case of Bard. The defendant had allegedly reasonable defenses that went to the jury. But the facts and the circumstances were still allowed to be considered by the jury in those cases, and now it would be decided by the judge. But the reality is that you wouldn't have a per se rule that just mere fact that there happens to be this defense out there, especially in a situation where you have a company that was absolutely digging their head in the sand and not reading the patent, not attempting to avoid infringement. Just as Your Honor noted in I4I, there was emails and marketing materials that specifically noted that Bridgeport was attempting to actually offer the product with all the same applications of the enjoined product, all the same applications of the patented product, and telling the companies that these products were interchangeable. And yet, they didn't have this defense. So we're not asking for some unreasonable rule. What we're saying is when there's evidence to the contrary, as there was in this case, that the defendant did not consider the patent, did not make a reasonable effort to not infringe, that Judge Connor erred when he just negated the actual testimony that was established during the infringement proceeding with this post hoc trial lawyer defense, that there's absolutely zero evidence that that's what informed the actions of the defendant. And if I may, I will give the rest of my time for rebuttal. Thank you. Thank you, Your Honor. Mr. Anderson, you have two minutes. Thank you very much, Your Honor. Very briefly, with regard to willfulness, I think it's important to note that the trial judge refused to give our limiting instruction during the trial to tell the jury that the willfulness evidence only related to and was relevant to the subjective prong of willfulness. All of this evidence came in. It was substantial, and it related primarily to a product that was not an issue, and they were also allowed to make it appear as though we did nothing to avoid infringement by changing a question on a deposition video to eliminate the question, did you do anything other than consult with an attorney? And other than consult with an attorney was edited out, so it was, did you do anything to avoid infringement? And literally my client said then on the video, jerks, because it's been edited out, and he says, no. That's pretty powerful stuff for a jury that can't cut holes. Yeah, and you had the opportunity to cross-examine the witnesses, to bring on your own rebuttal witnesses, and to clean up the record. You're asking us, I mean, you're suggesting that we evaluate here whether or not there was evidence that was misleading, and if somebody put on something that was arguably misleading, you get a new trial, notwithstanding your ability in the trial to refocus on all of that? We were not allowed to present our defense to willful infringement, which was Judge Computo's decision, and we were not allowed to mention the fact that we had sought an advice of counsel because we elected not to rely on it. If you applied the Third Circuit's test of whether it was highly probable that the errors did not affect our substantial rights, I don't think you can come to that conclusion. Finally, with regard to the carried-by limitation, I go back to the language that is clear on its face. The near-said trailing end modifies the carried-by segmental adapter, and Figure 8 does not modify that. Items 46 and 48 are referred to throughout the patent as locking tangs, not as tensioning tangs. What the court is doing, there is nothing that says that the tensioning tangs have to be a certain length, that they have to be near the trailing end, or that they have to engage the holes in the sidewall of the junction box at a certain point. The purpose of the tensioning tangs is for continuity, for grounding. How long they are, or where they touch the sidewalls of the junction box, doesn't matter. There is nothing that suggests that such a limitation should be read into the claim language. The near-said trailing end should be read in its ordinary English language to modify where the tensioning tangs are carried by the metal adapter. Thank you. Thank you, Mr. Anderson. Anything further, Ms. Sloan? Thank you, Your Honors. I just want to point out, specifically to your question, to my colleague there, with respect to willfulness, the fact of the matter is, they did not rely on the advice of counsel. So when the judge removed that very self-serving statement, he did that to prevent the defendant from using the advice of counsel as a sword in the shield, as this Court has said numerous times. They weren't relying on the advice of counsel, and as this Court held in Broadcom versus Qualcomm, if you're not relying on it, it's as if it didn't happen. So in numerous questions in the deposition, when we would try to ask the witnesses, what steps did you take? There would be an objection that there was potentially privileged information, and then within the answer, then, the witness would constantly then say, well, other than talk to an attorney. And so then the question would be, well, we're not asking you about the attorney. What did you do? So that's what got redacted, and that was reasonable. But most importantly, it's important to note that Arlington subpoenaed both Mr. Kiley and Mr. Arey to testify at trial, because of the fact that we thought it was so important to the willfulness case. They refused to come. They were the only two witnesses that were responsible for the alleged design of the product, filing for the patent, and they have been the only 36 witnesses designated by Bridgeport to discuss whether or not they were avoiding the... and doing any kind of remedial action to avoid infringement. They failed to show up. They sent instead the president at the time, which was Mr. Paul Susio. And Mr. Paul Susio was not there during the design of the product, knew nothing about it, and specifically testified in numerous depositions as well at trial that he never read the patent, never read the injunction, and never read even the settlement agreement, which was the subject of the breach of contract. So that's who the jury heard. That's who the jury actually had as their witness, and their entire defense that they wanted to present through Mr. Susio was that they waited until they got their patents before they launched the product. And as this court held in national presto, that's not a defense to infringement and it's clearly not a defense to willfulness. That is why the jury was entitled to properly find willfulness in this case, and even though now it's a judge's decision, Judge Conner actually erred in overriding all of that factual evidence of willfulness and objective recklessness by simply arguing that simply because there was a different judge that didn't inform the actions of the defendant, and they did not present a single... Thank you.  Thank you, Your Honor.